ALLEN COMSTOCK agt. HORACE STOWELL, sheriff, &c.    [*53]

Where a suit in replevin is discontinued, the plaintiff not being able to give the requisite sureties, and written notice of such discontinuance is served on the sheriff, from whom the property is replevied, and all costs are paid, and the sheriff agrees to accept the property back into his possession ; and subsequently the sheriff returns all the executions *nulla bona,* under which he had levied upon the replevied property: the execution creditors afterwards, on motion for judgment of discontinuance of the replevin suit, cannot have a return of the property to the sheriff, and consequently no right to a judgment for the value ; if they have been injured, their remedy must be against the sheriff.

*February Term,* 1846.
MOTION by defendant for judgment of discontinuance in replevin.

This suit was commenced on or about 9th July, 1845, by the plaintiff, against the defendant as sheriff of Washington county, who had levied upon the steamboat "Francis Saltus," by virtue of certain executions. On or about the 9th July, 1845, defendant's attorney served notice of retainer and exception to the bail given on the commencement of the suit on plaintiff's attorney, and subsequently served notice of exception to the bail on the coroner who replevied the boat. On the 26th July, 1845, plaintiff's attorney procured an order for thirty days further time for sureties to justify ; the time expired and the sureties did not justify. This motion was noticed for December special term last, and ordered to stand over to the present term. On the 3d December last, plaintiff's attorney served on defendant's attorney a notice discontinuing this suit, and consented that the property replevied be returned to the possession of P. C. Hitchcock, deputy sheriff, in the

[*54] same plight as when it was replevied; *being the steamer "Francis Saltus" and tackle; protesting, however, and claiming that the stipulation should never be any evidence that the plaintiff did not own the boat. On the same day paid to the deputy sheriff Hitchcock the amount of defendant's costs of the suit, including the costs of preparation for this motion, and took his receipt. Hitchcock stated in an affidavit he made for the motion, that he never employed any person to defend this suit; that John H. Boyd, of Whitehall, agreed to indemnify and save harmless him (Hitchcock), and the defendant from any costs or expense in the suit, and that he had not then (21st January, 1846), nor had he had the boat "Francis Saltus" in his possession, or in any manner controlled her since the commencement of this suit, yet he may have said that he would take the boat into his possession, believing that the legal effect of discontinuing the suit would oblige him to take back the possession of the boat; that he had executions against Peter Comstock and others amounting to upwards of $11,800, at the time of the commencement of this suit. John H. Boyd, law partner of David Wilson, the attorney for the defendant, stated that the defendant did not employ him to defend the suit; that Boyd & Wilson were employed to defend the suit by the persons interested in the executions levied upon the boat "Francis Saltus;" that the defendant had no interest whatever in the suit, nor had he anything to do in the managing of the defence, but it was managed wholly by the persons interested in the collection of the executions, in the defendant's hands or his deputy Hitchcock's at the time the boat was replevied. Boyd also stated he had been informed and believed that most of the means furnished to build the boat "Francis Saltus" was furnished by Peter Comstock, the father of the plaintiff; that Peter Comstock managed this suit on the part of the plaintiff, as far as he had any acquaintance with its progress; that Hitchcock, the deputy sheriff, never employed him (Boyd) to defend this suit, nor was he in any way liable for the costs of the defence; on the contrary, he agreed with Hitchcock, to

fully indemnify him and the defendant from all costs, &c., which they might be put to, or be made liable for, in consequence of the suit, and offered to furnish good bail to that effect; to which Hitchcock replied, his agreement was sufficient. Other affidavits were read on the motion, to show that this suit was not defended by the defendant or his deputy Hitchcock, but was defended by and for the creditors in the executions levied, solely. A copy of a bond of indemnity was produced on the motion, to show that Peter Comstock had secured the defendant for the course that Hitchcock, his deputy, had pursued *in this suit; in returning the executions which      [*55] were levied upon the boat, without a sale being made under them.

On the part of the plaintiff, it appeared from the affidavit of Peter Comstock that he had throughout acted as the agent of the plaintiff, that at the time the suit was commenced, certain executions against him (Peter Comstock) were in the hands of P. C. Hitchcock, the deputy of defendant, on which there was claimed to be due about $1,600, and no more. By virtue of these executions, the deputy levied on the steamer, "Francis Saltus," which never at any time belonged to him (Peter Comstock), but was owned by the plaintiff in this cause. After the property was replevied, he was unable to procure the requisite securities who would justify in an amount required by statute, and went to defendant to get him to consent to take less amount of security; which defendant declined doing, saying that he (defendant) had nothing to do with the suit; he should give no directions, it was his deputy's business; and he should hold the deputy and his bail responsible for any acts done or omitted, which should render him liable. Defendant said he did not employ the attorney to defend the suit; it was done by his deputy Hitchcock, the suit having been brought for an act of the deputy.

It appeared from the affidavits on the part of the plaintiff, that Hitchcock, the deputy sheriff, informed plaintiff's counsel when the steamer "Francis Saltus" was replevied, it was held by him (Hitchcock) by virtue of three executions; two in fa·

vor of Henry G. Tisdale, and one in favor of John H. Boyd, and by no others, which were issued on judgments against Peter Comstock and others; that the amount due upon all of the executions was from $1,600 to $2,000. Hitchcock then said, that inasmuch as he was satisfied that Peter Comstock had no interest in the boat, and as nobody had given him any indemnity for proceeding against the boat on or by virtue of an execution in favor of the Essex County Bank he then held, issued against Peter Comstock and others, and as he knew of no property of Peter Comstock's from which he could collect it, he should return it *nulla bona;* which last execution was returned *nulla bona,* on the 11th of August, 1845. Hitchcock stated in an affidavit made on the part of the plaintiff, that he had, previous to the 9th of July, 1845, advertised the boat under the two Tisdale executions and the Boyd execution, by the directions of John H. Boyd, Esq., from whose office they were issued. Those three, together with the Essex County Bank execution issued for about $10,000, were the only executions he then held against Peter Comstock. That he told Boyd he did not feel safe to go on and do anything [*56] further under the executions, unless he was *indemnified; that Boyd did not give any indemnity; that he never advertised the boat upon the Essex County Bank execution. He never did any act or thing under the Essex County Bank execution, so far as related to any levy or sale thereon. In December last, Boyd inquired of him what he was going to do with the executions: he replied he should return them, unless he was indemnified; to which Boyd made no reply. That shortly after this, in December, 1845, he returned the executions *nulla bona.*

Affidavits on the part of the plaintiff were produced, extended in detail, to show that the steamer "Francis Saltus" was built by and owned exclusively by Allen Comstock. It was also alleged on the part of the plaintiff, that the whole proceeding of levying upon the boat, &c., had been instituted by John H. Boyd, who was one of the stockholders of the old steamboat company on Lake Champlain, in order to break up

Comstock agt. Stowell.

and dispose of the steamer "Francis Saltus," which was run in opposition to the old line.

C. STEVENS, *defendant's counsel.*

D. WILSON, *defendant's attorney.*

G. STOW, *plaintiff's counsel.*

J. A. MILLARD, *plaintiff's attorney.*

BRONSON, Chief Justice. When the plaintiff's sureties failed to justify, the matter was adjusted between the plaintiff and the deputy Hitchcock, from whose custody the property had been taken by virtue of the writ of replevin. The plaintiff abandoned and discontinued the suit, paid the costs and surrendered the property to the deputy ; and the deputy agreed to receive it. The sheriff refused to interfere in the matter in any way, leaving all to the deputy. Neither the sheriff nor the deputy is here for the purpose of making this motion ; and I am at a loss to see what right the execution creditors have to make it. But what is quite decisive, all of the executions have either been satisfied or returned *nulla bona.* The sheriff no longer has any right to a return of the property ; and, consequently, he has no right to a judgment for the value. If the creditors have been injured, of which, however, there is no evidence, their remedy is against the sheriff. The proof is, that the bank execution, as well as the others, was returned *nulla bona ;* but if that be a mistake, I do not see how it could change the result. That execution was never levied upon the boat, and there is nothing to show that the bank was willing to take the hazard of selling the boat as the property of *Peter* Comstock. On the contrary, Mr. Simmons, the attorney, said the bank did not intend to proceed against the boat. I see no foundation for the motion. Motion denied with costs.